## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**FOREST GUARDIANS, a nonprofit corporation;**
**SINAPU, a nonprofit corporation; CENTER**
**FOR NATIVE ECOSYSTEMS, a nonprofit**
**corporation; ANIMAL PROTECTION**
**INSTITUTE, a nonprofit corporation;**
**and CARSON FOREST WATCH, a**
**nonprofit organization,**

   **Plaintiffs,**

**vs.**           **No. CIV 04-0143 RB/DJS**

**HARV FORSGREN, Regional Forester, U.S.**
**Forest Service, Region 3; U.S. FOREST SERVICE,**
**a federal agency; ANN VENEMAN, Secretary**
**of the U.S. Department of Agriculture; and the**
**UNITED STATES DEPARTMENT OF**
**AGRICULTURE, a federal department,**

   **Defendants.**

### MEMORANDUM OPINION AND ORDER

  **THIS MATTER** came before the Court on Defendants' Motion to Dismiss (Doc. 15), filed

on May 3, 2004.  Jurisdiction is founded upon 28 U.S.C § 1331.  Having reviewed the submissions

of the parties and the relevant law, I find that this motion should be granted as to Counts I and II,

and denied as to Counts III, IV, and V of the amended complaint.

.

### I. Background.

  Plaintiffs seek declaratory and injunctive relief pursuant to the citizen suit provision of the

Endangered Species Act ("ESA"), 16 U.S.C. § 1540(g), and the Administrative Procedures Act

("APA"), 5 U.S.C. §§ 701 to 706, for violations of the ESA and the National Environmental Policy

Act ("NEPA"), 42 U.S.C. §§ 4321 to 4370e.  (Comp. ¶ 1.)  Defendants have not challenged Plaintiffs' standing.  The allegations of the complaint and amended complaint indicate that Plaintiffs have standing to assert their claims.

Plaintiffs allege that the Forest Service failed to take any steps toward the conservation of the threatened Canada lynx, ("lynx") in the Carson and Santa Fe National Forests.  Plaintiffs claim that the Forest Service (1) failed to initiate and complete informal and formal Section 7 ESA consultation on how implementation of its Land and Resource Management Plans ("LRMPs") affects the lynx as required by the ESA (Counts I-III); and (2) failed to prepare either an environmental assessment or environmental impact statement to assess the significant new information or circumstances of having lynx in the Carson and Santa Fe National Forests as required by NEPA (Counts IV and V).  (Comp. ¶¶ 2-3.)

On September 28, 2004, Plaintiffs filed an amended complaint, adding allegations against the U.S. Fish and Wildlife Service's ("FWS"), as well as updated facts on the lynx recovery program in Colorado.  To the extent that the allegations of the amended complaint vary from those of the original complaint, the allegations of the amended complaint are recited herein.

With respect to the substantive claims, the amended complaint (1) added the FWS to Count I, the Section 7 (a)(1) ESA claim, and (2) changed Count III to a claim that the FWS's determination that the Carson and Santa Fe National Forests are not required to conduct Section 7 consultation on how their LRMPs are affecting lynx in New Mexico is a violation of Section 7.  Count II remains a section 7(a)(2) claim against the Forest Service in both the original and amended complaints.  The NEPA claims against the Forest Service, contained in Counts IV and V, are unchanged.

The Forest Service Defendants moved to dismiss the original complaint on the ground that

the lynx is not entitled to ESA protection within the State of New Mexico.  The amended complaint does not alter the analysis of the issues with respect to the Forest Service Defendants' motion to dismiss.

## II.      Standard.

A motion to dismiss should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all the well-pleaded factual allegations of the complaint as true and view them in the light most favorable to the non-moving party.  *Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1231 (10th Cir. 2002).

## III.     Facts.

The lynx is a medium-sized cat with long legs; large, well-furred paws; long tufts on the ears; and a short, black-tipped tail.  (Comp. ¶ 42.)  The lynx resembles its North American relative, the bobcat.  (Comp. ¶ 43.)  Compared to the bobcat, the lynx has larger feet, more black on the tail, more uniform coloring, and larger ear tufts and facial ruffs.  (*Id.*)  Lynx are highly specialized, migratory, and transient predators that inhabit extremely large areas of land.  (Comp. ¶ 44.)

Home ranges of individual lynx vary in size from three to 300 square miles.  (Comp. ¶ 46.)  Home ranges for individual lynx at the southern extent of the species' range are generally large compared to those in the northern portion of the range in Canada.  (Comp. ¶ 46.)  The lynx's primary prey is the snowshoe hare, which comprises 35-97% of the lynx's diet throughout its range.  (Comp.

¶¶ 47-48.)  Other prey species include squirrels, grouse, rabbits, porcupine, beaver, rodents, fish, and small ungulates.  (Compl. ¶ 48.)  Southern populations likely prey on a wider diversity of species than northern populations because of lower average snowshoe hare densities.  (Comp. ¶ 49.)  In areas characterized by patchy distributions of lynx habitat, lynx may prey on other species that occur in adjacent habitats, such as white-tailed jackrabbit, black-tailed jackrabbit, mountain cottontail, sage grouse, and Columbia short-tailed grouse.  (*Id.*)

The lynx historically inhabited the Southern Rocky Mountains of south-central Wyoming, Colorado, and north-central New Mexico.  (Comp. ¶ 50.)  Lynx habitat in the Southern Rocky Mountains occurs in the subalpine and upper montane forest zones, typically between 8,000 and 12,000 feet in elevation.  (Comp. ¶ 54.)  The subalpine and upper montane forest zones, interspersed with lower montane zones, exist throughout the San Juan and Sangre de Cristo Mountain ranges in north-central New Mexico.  (Comp. ¶ 57.)

In 1999, the Colorado Division of Wildlife ("CDOW") began releasing lynx into a "core recovery area" in southwestern Colorado's San Juan Mountains.  (Comp. ¶ 62.)  CDOW is currently tracking 85 of the 110 possibly surviving lynx.  (Am. Comp. ¶ 78.)  Twenty-five lynx are considered missing. (Am. Comp. ¶ 79.)  Through extensive aerial and satellite tracking, CDOW continues to track the movement patterns of the released lynx.  (Am. Comp. ¶ 82.)  At least 28 individuals were located at 184 locations in New Mexico.  (Am. Comp. ¶ 84.)  Most telemetry locations were during the summer with a concentration in the San Juan Mountains, although at least one lynx spent the summer of 2003 in the New Mexico portion of the Sangre de Cristos.  (*Id.*)  At least six lynx have been killed in New Mexico; two were shot near Chama, one was hit by a car, and a cut radio collar was found in a dump near Taos.  (Am. Comp. ¶¶ 92-93.)  CDOW determined that the lynx mortality

rate was higher in New Mexico than it was in other areas.  (Am. Comp. ¶ 95.)

The FWS has determined that the contiguous United States population of lynx is threatened by the inadequacy of existing regulatory mechanisms, in particular, United States Forest Service LRMPs.  (Comp. ¶ 91.)  The Forest Service is proposing to amend LRMPs in the Southern Rockies to adopt conservation measures for lynx in eleven national forests.  (Comp. ¶ 97.)  Neither the Carson nor the Santa Fe National Forest are included in this process.  (*Id.*)  In December 1999, the Forest Service completed a biological assessment on the effects of its LRMPs on lynx.  (Comp. ¶ 98.)  Using the best available scientific and commercial information, the biological assessment identified the potential impacts on lynx resulting from 57 forest plans throughout the nation.  (Comp. ¶ 99.)  Neither the Carson nor the Santa Fe National Forest participated in the biological assessment.  (Comp. ¶ 102.)

The biological assessment determined that the LRMPs in the Southern Rockies may adversely impact lynx and lynx habitat by (1) having a fire exclusion policy that changes the vegetative mosaic maintained by natural disturbances; (2) allowing grazing of domestic livestock, which reduces forage for lynx prey; (3) allowing roads and winter recreation trails that facilitate access to historical lynx habitat by competitors; (4) allowing levels of human access via forest roads that may present risk of incidental trapping or illegal shooting of lynx; (5) having limited direction in the forest plan pertaining to tree thinning and foraging habitat; and (6) having weak direction for distributing lynx habitat components across the landscape.  (Comp. ¶ 104.)  The biological assessment recommends amending or revising LRMPs to incorporate conservation measures that would reduce or eliminate the adverse effects on the lynx.  (Comp. ¶ 105.)

Following completion of the biological assessment, the Forest Service entered into a

conservation agreement with the FWS to promote the conservation of lynx and its habitat on national forest lands.  (Comp. ¶ 106.)  The Carson and Santa Fe National Forests did not participate in, or sign, the conservation agreement.  (Comp. ¶ 109.)

On March 24, 2000, the FWS published a final rule listing the Distinct Population Segment ("DPS") of the lynx as threatened under Section 4 of the ESA.  *See Determination of Threatened Status for the Contiguous U.S. Distinct Population Segment of the Canada Lynx,* 65 Fed. Reg. 16,052 (Mar. 24, 2000).

After the listing, the FWS issued a biological opinion and completed informal consultation on the lynx.  (Comp. ¶ 110.)  In the biological opinion, the FWS concluded that the LRMPs, as implemented in conjunction with the conservation agreement, are not likely to jeopardize the continued existence of the lynx.  (Comp. ¶ 112.)  The eleven national forests in the Southern Rocky Mountains that participated in the biological assessment, the conservation agreement, and were considered in the biological opinion are now in the process of amending their LRMPs to adopt conservation measures for the lynx.  (Comp. ¶ 114.)  These national forests are examining the biological, social, and economic effects of the proposed amendments and various alternatives, through the NEPA process.  (Comp. ¶ 115.)  Neither the Carson National Forest nor the Santa Fe National Forest are amending their LRMPs to include conservation measures for the lynx.  (Comp. ¶ 117.)

On October 30, 2003, Plaintiffs sent the Carson and Santa Fe National Forests a sixty-day notice of intent to sue letter, informing the Forest Service of their intent to sue for violations of Section 7 of the ESA.  (Comp. ¶ 118.)  In a letter dated December 29, 2003, the Forest Service stated that it would not conduct a Section 7 consultation on lynx in New Mexico because "any Canada lynx found in New Mexico have no ESA status, and, therefore, no Section 7 consultation is required."

(Comp. ¶ 121.)

In the amended complaint, Plaintiffs added factual allegations concerning two letters issued by the FWS on January 2, 2004, stating that "lynx that disperse to New Mexico are not part of the listed population and are not subject to section 7 consultation."  (Am. Compl. ¶ 7.)

IV.    **Discussion.**

A.    **Whether Plaintiffs' Section 7 claims fail as a matter of law.**

Defendants argue that the lynx is not entitled to ESA protection in New Mexico.  The ESA, enacted in 1973, "represented the most comprehensive legislation for the preservation of endangered species ever enacted by any nation" by providing "a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved."  *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 180 (1978).  The ESA aims to conserve and recover species, not individual animals. *Wyoming Farm Bureau Fed'n v. Babbitt*, 199 F.3d 1224, 1235 (10th Cir. 2000).  This objective is "evidenced by the well-established fact individual animals can and do lose Endangered Species Act protection simply by moving about the landscape."  *Id*.  Individual animals are protected by the ESA based on where they are found, not based on where they originate.  *United States v. McKittrick*, 142 F.3d 1170, 1173 (9th Cir. 1998).

The March 24, 2000 listing states that the DPS range for lynx consists of the "forested portions of the States of Colorado, Idaho, Maine, Michigan, Minnesota, Montana, New Hampshire, New York, Oregon, Utah, Vermont, Washington, and Wisconsin."  *See Determination of Threatened Status for the Contiguous U.S. Distinct Population Segment of the Canada Lynx*, 65 Fed. Reg. at 16,052.  On July 3, 2003, in response to a district court ruling directing it to re-examine the listing,

the FWS explicitly excluded New Mexico from the DPS range because it had no reliable records of native lynx occurring in New Mexico. *See Notice of Remanded Determination of Status for the Contiguous United States Distinct Population Segment of the Canada Lynx*, 68 Fed. Reg. 40,076 (Jul. 3, 2003). The agency stated that "[w]e do not consider lynx recently released into Colorado that strayed into New Mexico as sufficient reason to include New Mexico within the range of native lynx because there is no evidence habitat in New Mexico historically supported lynx." *Id.*, 68 Fed. Reg. at 40,083.

The FWS has the authority to designate a particular population of a species as a DPS and consider that DPS as a species for listing purposes. 16 U.S.C. §§ 1532(16), 1533(a)(1). The ability to designate and list a DPS allows the FWS to provide different levels of protection to different populations of the same species. *See Policy Regarding the Recognition of Distinct Vertebrate Population Segments Under the Endangered Species Act*, 61 Fed. Reg. 4,722 (Feb. 7, 1996). The FWS need not list an entire species as endangered where only one of its populations faces extinction. *Nat'l Ass'n of Home Builders v. Norton*, 340 F.3d 835, 842 (9th Cir. 2003).

In this case, the listing clearly delineated the boundaries of the protected lynx DPS to the fourteen enumerated states. *See Determination of Threatened Status for the Contiguous U.S. Distinct Population Segment of the Canada Lynx,* 65 Fed. Reg. at 16,052. The FWS expressly excluded New Mexico from the DPS. *See Notice of Remanded Determination of Status for the Contiguous United States Distinct Population Segment of the Canada Lynx*, 68 Fed. Reg. at 40,083. Lynx outside the lynx DPS do not have protected status. *Wyoming Farm Bureau*, 199 F.3d at 1235; *McKittrick*, 142 F.3d at 1173. Therefore, an individual lynx crossing the border from Colorado into New Mexico loses ESA protection.

8

Section 7 applies only to listed species.  *See* 16 U.S.C. §§ 1536(a)(2), 1536(a)(4).  The lynx is not a listed species in New Mexico.  The Carson and Santa Fe National Forests are located entirely within New Mexico.  The Forest Service is not required to participate in Section 7 consultations on lynx for activities within the Carson and Santa Fe National Forests.  Therefore, Plaintiffs' Section 7 claims against the Forest Service fail as a matter of law.  Counts I and II of the amended complaint should be dismissed.

**B.      Whether the Forest Service is required to supplement its NEPA analysis.**

Plaintiffs contend that NEPA requires the Forest Service to supplement the environmental impact statements prepared for the LRMPs for the Carson and Santa Fe National Forests because new circumstances exist in that lynx are traveling into these forests.  NEPA charges federal agencies with the responsibility of considering every significant aspect of the environmental impact of a proposed action.  *Baltimore Gas & Elec. Co. v. Nat'l Res. Def. Council*, 462 U. S. 87 (1983).  Agencies must prepare a detailed statement on the environmental impact for all "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C).  Since NEPA does not provide a private right of action for its violations, courts review NEPA questions under the APA. *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 375 (1989).

An agency is required to prepare a supplemental environmental impact statement "if there are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts." 40 C.F.R. § § 1502.9(c)(1)(ii); *Friends of Marolt Park v. U.S. Dep't of Transp.*, ____ F.3d ____, 2004 WL 1987270 (10th Cir. 2004)).  However supplementation is not required "every time new information comes to light."  *Colorado Envtl. Coalition v. Dombeck*, 185

F.3d 1162, 1177 (10th Cir. 1999) (quoting *Marsh*, 490 U.S. at 373). A supplemental environmental impact statement is required only "if the new information is sufficient to show [the proposed action] will affect the quality of the human environment in a significant manner or to a significant extent not already considered." *Marsh*, 490 U.S. at 374.

When new information comes to light, the agency must consider it, evaluate it, and make a reasoned determination whether it is of such significance as to require a supplemental environmental impact statement. *Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 558 (9th Cir. 2000). The relevant significance of the new information is a factual issue that is reviewed under the APA's arbitrary and capricious standard. *Colorado Envtl. Coalition*, 185 F.3d at 1178. The Forest Service's decision to forego a supplemental environmental impact statement must be upheld so long as the record demonstrates the agency reviewed the proffered supplemental information, evaluated the significance of the new information (or lack thereof), and provided an explanation for its decision not to supplement the existing analysis. *Id.*

The presence of individual lynx in New Mexico may be significant new information because the lynx is listed as a threatened species in Colorado. *See e.g Oregon Nat Res. Council v. Forsgren*, 252 F.Supp.2d 1088, 1106-1107 (D. Or. 2003) (requiring Forest Service to supplement environmental impact statement where revised mapping direction pertaining to lynx was potentially affected by timber sale.) Accepting the allegations of the amended complaint as true, at least six lynx have been killed in New Mexico, and the lynx mortality rate is higher in New Mexico than in other areas. CDOW is attempting to establish a sustainable population of lynx in just-over-the-state-line-habitat that is similar to, and contiguous with, the Carson and Santa Fe National Forests. At this stage of the proceedings, it is not possible to conclude that Defendants have no duty to supplement

the current NEPA documents for the Carson and Santa Fe National Forests' LRMPs in light of the new information regarding the presence of lynx in New Mexico. *Colorado Envtl. Coalition*, 185 F.3d at 1178.  Accordingly, the motion to dismiss will be denied as to the NEPA claims.

**V.      Conclusion.**

The lynx is not a protected species under the ESA in the State of New Mexico.  As the record now stands, it is not possible to evaluate whether the Forest Service's decision not to prepare supplemental environmental impact statements for the LRMPs for the Carson and Santa Fe National Forests was arbitrary and capricious.  The motion to dismiss should be granted as to Counts I and II of the amended complaint, and denied as to Counts III, IV, and V of the amended complaint. Because oral argument would not materially assist in reaching a decision, Plaintiffs' request for oral argument is denied.

**WHEREFORE,**

**IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. 15), filed on May 3, 2004, is **GRANTED AS TO COUNTS I AND II OF THE AMENDED COMPLAINT, AND DENIED AS TO COUNTS III, IV, AND V OF THE AMENDED COMPLAINT.**


_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**