IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**FOREST GUARDIANS, a nonprofit corporation;**
**SINAPU, a nonprofit corporation; CENTER**
**FOR NATIVE ECOSYSTEMS, a nonprofit**
**corporation; ANIMAL PROTECTION**
**INSTITUTE, a nonprofit corporation;**
**and CARSON FOREST WATCH, a**
**nonprofit organization,**

       **Plaintiffs,**

vs.                                                                                            No. CIV 04-0143 RB/DJS

**HARV FORSGREN, Regional Forester, U.S.**
**Forest Service, Region 3; U.S. FOREST SERVICE,**
**a federal agency; ANN VENEMAN, Secretary**
**of the U.S. Department of Agriculture; and the**
**UNITED STATES DEPARTMENT OF**
**AGRICULTURE, a federal department,**

       **Defendants.**

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendants' motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the following reasons, the Court will **GRANT** Defendants' motion for judgment on the pleadings.

**I. Factual background.**

The Canadian Lynx ("lynx") is a medium-sized cat with long legs, large, well-furred paws, long tufts on the ears, and a short, black-tipped tail. (Comp. ¶ 42.) The lynx resembles its North American relative, the bobcat. (Comp. ¶ 43.) Lynx are highly specialized, migratory, transient predators that inhabit extremely large areas of land. (Comp. ¶ 44.) The lynx's primary prey is the snowshoe hare, which comprises 35-97% of its diet. (Comp. ¶¶ 47-48.) Lynx habitat in the Southern

Rocky Mountains occurs in the subalpine and upper montane forest zones, typically between 8,000 and 12,000 feet in elevation. (Comp. ¶ 54.)

In 1999, the Colorado Division of Wildlife ("CDOW") began releasing lynx into a "core recovery area" in southwestern Colorado's San Juan Mountains. (Comp. ¶ 62.) CDOW is currently tracking 85 of the 110 potentially surviving lynx with aerial and satellite equipment. (Am. Comp. ¶¶ 78, 82.) At least 28 individuals have been detected in Northern New Mexico. (Am. Comp. ¶ 84.) At least six lynx have died in Northern New Mexico. (Am. Comp. ¶¶ 92-93.) The Forest Service ("FS") proposes to amend Land Resource Management Plans ("LRMP") in the Southern Rockies to adopt conservation measures for lynx in eleven national forests. (Comp. ¶ 97.)

The National Forest Management Act of 1976 requires the FS to "develop, maintain, and, as appropriate, revise land and resource management plans for units of the National Forest System." *Ohio Forestry Ass'n Inc. v. Sierra Club*, 523 U.S. 726, 728 (1998) (internal citations omitted). This vast system includes 155 national forests, 20 national grasslands, 8 land utilization projects, and comprises nearly 300,000 square miles of land in 44 states. *Id.* at 728-29. In developing the LRMPs that guide its management of wildlife, the FS "must take both environmental and commercial goals into account." *Id.* (internal citations omitted).

In December 1999, in keeping with its duty to manage our national forests, the FS completed a biological assessment on the effects of its LRMPs on lynx. (Comp. ¶ 98.) Using the best available scientific and commercial information, the biological assessment identified the potential impacts on lynx resulting from 57 forest plans throughout the nation. (Comp. ¶ 99.) The biological assessment recommended amending or revising LRMPs to incorporate conservation measures that would reduce or eliminate the adverse effects on lynx. (Comp. ¶ 105.) Following completion of the biological

2

assessment, the FS entered into a conservation agreement with the U.S. Fish and Wildlife Service ("FWS") to promote the conservation of lynx and its habitat on national forest lands. (Comp. ¶ 106.)

To that end, on March 24, 2000, the FWS published a final rule listing a Distinct Population Segment ("DPS") of lynx as threatened under Section 4 of the Endangered Species Act ("ESA"). *See 16* U.S.C. § *1533; see also Determination of Threatened Status for the Contiguous U.S. Distinct Population Segment of the Canada Lynx,* 65 Fed. Reg. 16,052 (Mar. 24, 2000). The March 24, 2000 listing indicated that the DPS range for lynx consists of the "forested portions of the States of Colorado, Idaho, Maine, Michigan, Minnesota, Montana, New Hampshire, New York, Oregon, Utah, Vermont, Washington, and Wisconsin." *See Determination of Threatened Status for the Contiguous U.S. Distinct Population Segment of the Canada Lynx,* 65 Fed. Reg. at 16,052. The lynx DPS range did not include the State of New Mexico.

On July 3, 2003, in response to a district court ruling directing it to re-examine the listing, the FWS again excluded New Mexico from the DPS range because it had no reliable records of native lynx occurring historically in New Mexico. *See Notice of Remanded Determination of Status for the Contiguous United States Distinct Population Segment of the Canada Lynx*, 68 Fed. Reg. 40,076 (Jul. 3, 2003). The FWS explained that "[w]e do not consider lynx recently released into Colorado that strayed into New Mexico as sufficient reason to include New Mexico within the range of native lynx because there is no evidence habitat in New Mexico historically supported lynx." *Id*., 68 Fed. Reg. at 40,083.

After publishing the lynx DPS, the FWS issued a biological opinion and completed informal consultation on the lynx pursuant to Section 7 of the Endangered Species Act ("ESA"). (Comp. ¶ 110.) Eleven national forests in the Southern Rocky Mountains are now in the process of amending

their LRMPs to adopt conservation measures for the lynx. (Comp. ¶ 114.) Neither the Carson National Forest or the Santa Fe National Forest in Northern New Mexico participated in the biological assessment or the conservation agreement amongst the eleven national forests in the Southern Rockies and neither of them are amending their LRMPs to include conservation measures for the lynx. (Compl. ¶¶ 102, 109, 117.)

On October 30, 2003, Plaintiffs (collectively "Forest Guardians") sent the Carson and Santa Fe National Forests a sixty-day notice of intent to sue letter, and informed the FS of their intent to sue for violations of Section 7 of the ESA. (Comp. ¶ 118.) In a letter dated December 29, 2003, the FS stated that it was not required to conduct a Section 7 consultation on lynx in New Mexico because "any Canada lynx found in New Mexico have no ESA status, and, therefore, no Section 7 consultation is required." (Comp. ¶ 121.)

In its amended complaint, Forest Guardians added factual allegations concerning two letters issued by the FWS on January 2, 2004, which stated that "lynx that disperse to New Mexico are not part of the listed population and are not subject to [S]ection 7 consultation." (Am. Compl. ¶ 7.)

**II. Procedural history.**

Forest Guardians sought declaratory and injunctive relief pursuant to the citizen suit provision of the ESA, 16 U.S.C. § 1540(g), and the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701 to 706, for violations of the ESA and the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 to 4370e. (Comp. ¶ 1.) Forest Guardians claimed that the FS (1) failed to initiate and complete informal and formal Section 7 consultation on how implementation of its LRMPs affects the lynx as the ESA requires (Counts I-III); and (2) failed to prepare either an environmental assessment or environmental impact statement to assess the significant new information or

circumstances of lynx inhabiting the Carson and Santa Fe National Forests as required by NEPA (Counts IV and V).  (Comp. ¶¶ 2-3.)

On September 28, 2004, Plaintiffs filed an amended complaint, which changed count III to a claim that the FWS' determination that the Carson and Santa Fe National Forests are not required to conduct Section 7 consultation on how their LRMPs are affecting lynx in New Mexico violated Section 7.  The NEPA claims against the FS, contained in counts IV and V, remained unchanged.  Defendants moved to dismiss the original complaint on the ground that lynx are not entitled to the ESA's protection within the State of New Mexico.

In a prior ruling the Court granted Defendants' motion to dismiss with respect to counts I and II, reasoning that Section 7 applies only to listed species.  *See* 16 U.S.C. §§ 1536(a)(2), 1536(a)(4).  Because the lynx is not a listed species (New Mexico is not listed as part of the lynx DPS) in New Mexico, the FS was not required to participate in Section 7 consultations on lynx for activities within the Carson and Santa Fe National Forests.

With respect to counts IV and V, however, Forest Guardians contended that NEPA requires the FS to supplement the environmental impact statements prepared for the Carson and Santa Fe National Forests' LRMPs because new circumstances exist in that lynx are traveling into these forests.  The Court ruled that "[a]s the record now stands, it is not possible to evaluate whether the Forest Service's decision not to prepare supplemental environmental impact statements for the LRMPs for the Carson and Santa Fe National Forests was arbitrary and capricious."  The Court, therefore, denied Defendants' motion to dismiss as to counts III-V of the amended complaint.

The only  motion before the Court is Defendants' motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) on counts III-V.

5

**III. Analysis.**

    **A. Standard of review.**

Federal Rule of Civil Procedure 12(c) provides that after "the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." The Court treats a motion for judgment on the pleadings pursuant to Rule12(c) "under the same standard applicable to a 12(b)(6) dismissal." *Ward v. Utah*, 321 F.3d 1263, 1266 (10th Cir. 2003). On a motion for judgment on the pleadings the Court must "accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff[s]." *Ramirez v. Dep't of Corr., Colorado*, 222 F.3d 1238, 1240 (10th Cir. 2000) (citations omitted). In general, "the complaint should not be dismissed 'unless it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief.'" *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

    **B. Forest Guardians' Section 7 claim.**

In count III of their amended complaint, Forest Guardians contend that FWS' determination that neither the Carson or Santa Fe National Forests are required to consult on how their LRMPs affect lynx in New Mexico violates Section 7 of the ESA. In passing the ESA, "Congress defined 'species,' consistent with its broad conservation and recovery goals, to constitute distinct, interbreeding population segments [DPSs] or subspecies, not individual animals." *Wyoming Farm Bureau Fed'n v. Babbitt*, 199 F.3d 1224, 1236 (10th Cir. 2000). In other words, "an individual animal does not a species, population or population segment make." *Id.* The 28 individual lynx that have crossed into New Mexico from Colorado, for example, are not part of the lynx DPS that FWS listed as threatened under the ESA in March of 2000.

Forest Guardians continue to argue that the FWS impermissibly used the state line dividing New Mexico and Colorado in determining the lynx DPS. As the Tenth Circuit has held, the ESA's broad objective is "further evidenced by the well-established fact [that] individual animals can and do lose Endangered Species Act protection simply by moving about the landscape." *Babbitt*, 199 F.3d at 1235. For example, the "line dividing protected and unprotected (or differently protected) populations is sometimes an international boundary . . . *a state boundary* (*e.g.*, brown pelicans, which west of the Mississippi-Alabama state line are listed as endangered, while east of that line are unlisted) . . . a county boundary . . . a measure of latitude . . . a point on the coast . . . a distance from the coastline . . . or even a point on a river." *Babbitt*, 199 F.3d at 1236 n.4 (emphasis added). The ESA authorizes the FWS to list lynx in Colorado as threatened and leave lynx in New Mexico unprotected.

As the Court noted in granting Defendants' motion to dismiss with respect to counts I and II, lynx lose their protected status when they cross into New Mexico. The FWS has the authority to designate a particular population of a species as a DPS and consider that DPS a species for listing purposes. 16 U.S.C. §§ 1532(16), 1533(a)(1). Lynx outside the DPS, therefore, do not receive the same protection under the ESA.

On March 24, 2000, the FWS listed thirteen states as the DPS range for lynx. That list did not include New Mexico. Moreover, the FWS did not include New Mexico as part of the lynx DPS following a court-ordered reexamination of the DPS range on July 3, 2003. Individual lynx that have strayed into New Mexico, therefore, have no protection under the ESA.

Section 7 of the ESA applies only to listed species. Forest Guardians maintain that they are challenging the FWS' interpretation of the DPS listing rather than the DPS listing itself, which is a claim that should have been brought under Section 4 of the ESA since that is the section that governs

7

the listing of a species as endangered or threatened. 16 U.S.C. § 1533. In any event, Section 7 only imparts a duty on the FWS to consult with respect to listed species. Lynx in New Mexico are not part of the listed lynx DPS. Since the Carson and Santa Fe National Forests are entirely within New Mexico, the FWS was not required to conduct a Section 7 consultation on lynx within those forests or elsewhere in the State of New Mexico. Therefore, the Court will **GRANT** Defendants' motion for judgment on the pleadings with respect to count III of Forest Guardians' amended complaint.

### C. Forest Guardians' NEPA claims.

Forest Guardians argues that NEPA requires the FS to supplement the EIS it prepared for the Carson and Santa Fe National Forest LRMPs in light of "significant new circumstances," that is, lynx inhabiting those forests. In *Norton v. Southern Utah Wilderness Alliance et al.* (SUWA), 124 S.Ct. 2373 (2004), the Supreme Court held that NEPA "requires a federal agency to prepare an environmental impact statement (EIS) as part of any 'proposals for legislation and other major Federal actions significantly affecting the quality of the human environment.'" *Id.* (quoting 42 U.S.C. § 4332(2)(C)). NEPA requires an agency to supplement its initial EIS where "[t]here are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts." *Id.* (internal citations omitted).

NEPA requires a federal agency to "take a 'hard look' at the new information to assess whether supplementation might be necessary." *Id.* (citing *Marsh v. Oregon Natural Res. Council*, 490 U.S. 360, 385 (1989). Supplementation is necessary, however, "only if there remains 'major Federal actio[n]' to occur." SUWA, 124 S.Ct. at 2385; *see also EMR Network v. Fed. Communications Comm'n*, 391 F.3d 269, 272 (D.C. Cir. 2004). The only issue with respect to Forest Guardians' NEPA claim, therefore, is whether there was an ongoing federal action with

respect to the LRMPs of the Carson and Santa Fe National Forests.

The FS' decision whether or not to conduct an environmental assessment or prepare a supplemental EIS for the Carson and Santa Fe National Forests is controlled by the "arbitrary and capricious" standard of Section 706(2)(A) in the APA. *Marsh v. Oregon Natural Res. Council*, 490 U.S. 360, 375 (1989); *Sierra Club v. Lujan*, 949 F.2d 362, 367 (10th Cir. 1991). This means that the FS' decision not to prepare a supplemental EIS should be overturned only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *EMR Network*, 391 F.3d at 272-73 (citing the APA, 5 U.S.C. § 706(2)(A)).

Forest Guardians cite repeatedly to *Pacific Rivers Council v. Thomas*, 30 F.3d 1050 (9th Cir. 1994), for the proposition that LRMPs represent ongoing federal action even after their adoption. That case, however, did not involve a NEPA claim. Instead, it dealt with LRMPs in the context of the duty to consult under Section 7 of the ESA. *Id.* at 1051. In *Pacific Rivers,* the Ninth Circuit held that the FS was required to consult on how an LRMP would affect the chinhook salmon, which was listed as threatened after the LRMP was implemented. *Id.* at 1053. In our matter, the FS does not contend that it had no duty to consult on how LRMPs may affect an endangered or threatened species. In fact, the FS did consult with the FWS on how the LRMPs affect the lynx in the listed DPS and eleven national forests are now amending their LRMPs in response to that consultation. Clearly, however, New Mexico is not part of the listed DPS for lynx. *Pacific Rivers* is distinguishable, therefore, because it did not deal with the issue of whether LRMPs represent ongoing major federal action under NEPA. Moreover, it was decided nearly 10 years before the Supreme Court's ruling in SUWA.

In SUWA the Supreme Court held that despite new evidence of increased off road vehicle use

9

in wilderness study areas covered by the land use plan of the Bureau of Land Management ("BLM"), NEPA did not require the BLM to take a "hard look" at the need to supplement its EIS. 124 S.Ct. at 2384-85. The Court reasoned that once the land use plan was approved, there was no major federal action requiring NEPA supplementation because "the only agency action that can be compelled under the APA is action legally *required*." SUWA, 124 S.Ct. at 2379. The Court stated that although approval of an LRMP is a "major federal action requiring an EIS" that "action is completed when the plan is approved." *Id.* at 2385.

In this case, similarly, no major federal action occurred with respect to the Carson and Santa Fe National Forests' LRMPs. The LRMPs for these forests were completed in 1986 and 1987, respectively. Since that time the FS has undertaken extensive conservation efforts on behalf of lynx habitat. In December 1999, for example, the FS completed a biological assessment on the effects of its LRMPs on lynx, which utilized the best available data from 57 forest plans throughout the country. The FS then entered into a conservation agreement with the FWS to conserve lynx and their habitat. To promote lynx conservation, the FWS published a final rule in March 2000 listing lynx as threatened under Section 4 of the ESA in thirteen states. The FWS reexamined this listing in July 2003.

Eleven national forests throughout the Southern Rocky Mountain range are now in the process of amending their LRMPs to protect the lynx. There may be ongoing major federal action with the LRMPs of *those* eleven national forests since they are in the process of amending their LRMPs. SUWA, 124 S.Ct. at 2385.

However, the Carson and Santa Fe National Forests of New Mexico never participated in the conservation agreement amongst the eleven national forests in the Southern Rockies and neither of

10

them are currently amending their LRMPs.  The FWS excluded New Mexico from the lynx DPS based on its determination, after reviewing extensive data, that New Mexico was not part of the historical lynx habitat.  NEPA "prohibits uninformed--rather than unwise--agency action." *Babbitt*, 199 F.3d at 1240 (internal quotations omitted).  NEPA also instructs courts to give deference to the FS' determinations.

The Tenth Circuit, for example, has ruled that courts "will not second guess the wisdom of [the FS'] ultimate decision or conclusions concerning the need for additional research or the impacts . . . on naturally occurring populations or subspecies" when the FS based their decision on available data. *Id.*  The FS and the FWS were both aware that some individual lynx were crossing over the border between Colorado and New Mexico at the time the final DPS list was published and were aware that individual lynx were present in New Mexico when they reexamined the listing rules in July 2003.  The lynx are not protected under the ESA in New Mexico.  Therefore, the FS' decision not to prepare a supplemental EIS for the Carson and Santa Fe National Forests with respect to how those forests' LRMPs were affecting their lynx population was not "arbitrary and capricious." *Marsh*, 490 U.S. at 376.

In sum, there is no ongoing major federal action that requires the FS to take a "hard look" at the need to supplement the EIS with respect to the Carson and Santa Fe National Forests.  To hold otherwise would be akin to "injecting the judge into [the] day-to-day management" of our national forests and the Court does not wish to take on that role.  SUWA, 124 S.Ct. at 2381.

The Court, therefore, will **GRANT** Defendants motion for judgment on the pleadings with respect to counts IV and V.

Defendants' Rule 12(c) motion for judgment on the pleadings with respect to counts III

through V of Forest Guardians' amended complaint is hereby **GRANTED**. The case, therefore, is dismissed.

*Robert Brack*

---

**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**